# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | | |
| --- | --- | --- | --- |
| | ) | | |
| v. | ) | Cause No. | 1:15-CR-33-HAB |
| | ) | | (1:19-CV-473-HAB) |
| KELLY CUSTER | ) | | |

## OPINION AND ORDER

Following sentencing on a single count of Conspiracy to Commit Wire Fraud, Kelly Custer ("Custer") has filed a pro se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 261). Custer alleges, generally, that her trial counsel, Attorney Pat Arata, was ineffective. The Government filed its Response in Opposition to Section 2255 Petition (ECF No. 267) on January 13, 2020.

**A.  Background**

Beginning in 2007, Custer embarked upon a scheme whereby she, with the help of her children, defrauded an elderly couple out of nearly $1.5 million by claiming that the money was owed to the mafia and that various individuals would be injured or killed if the money was not paid. The scheme ended only when the victims, having paid their last dollar, reported the "mafia" threats to the FBI. Following a brief investigation, Custer was charged on June 24, 2015, with conspiracy, wire fraud, and communicating a threat in interstate commerce. Custer sought appointed counsel, and Attorney Arata was appointed to represent her.

Unfortunately, Custer's health severely delayed proceedings. On February 24, 2016, this Court continued Custer's trial, over the objection of the Government. The continuance was granted only after Attorney Arata submitted documentation supporting Custer's health problems, including her medical appointment schedule, medical records, and prescription list. (ECF No. 80). Attorney

Arata would continue to successfully seek continuances due to Custer's health issues, consistently providing the Court with documentation and evidence demonstrating the treatments and diagnoses that Custer was receiving. (ECF Nos. 101, 117, 119, 131).

On May 29, 2018, Custer entered into a Plea Agreement (ECF No. 144) wherein she agreed to plead guilty to a single count of conspiracy to commit wire fraud in exchange for the dismissal of the remaining counts. In the Plea Agreement, Custer admitted that:

> During this period, my family received a substantial amount of money from the two Victims referenced in the Indictment. The Victims paid my family money because I falsely informed the Victims that, if they did not pay the money, members of the mafia would harm the Victims, their family, and/or their friends. I sent these threats to the Victims and involved my children, and their friends, in my scheme.

(*Id*. at 3). At her June 11, 2018, change of plea hearing, Custer confirmed that she understood the proceedings and that she had discussed her plea, and her potential sentence, with Attorney Arata. Custer again admitted to the scheme at the change of plea hearing, admitting that she came up with the scheme and involved her children to pick up the money. Custer also admitted that the Government's recitation of the offense conduct was correct.

Custer's initial presentence investigation report ("PSR") was prepared on October 17, 2018. Attorney Arata filed an eight-page objection to the PSR on February 11, 2019. (ECF No. 229). In that objection, Attorney Arata challenged the PSR on several grounds, including:

- the amount of money involved in the scheme;
- whether Custer was properly assigned a 14-level increase for the amount of loss, a 2-level increase for financial hardship to the victims, and a 4-level increase for being an organizer or leader;
- the allocation of nine criminal history points from convictions dating back to the 1980s; and

- Custer's entitlement to a variance based on her medical conditions.

Attorney Arata also filed a Sentencing Memorandum (ECF No. 232) on March 4, 2019, wherein he advocated for consideration of various § 3553(a) factors, including Custer's health, age, and nature of the crime. As a result of Attorney Arata's filings, the parties were able to reach an agreement that reduced the enhancement for Custer's role in the offense to two levels.

Custer was sentenced on September 3, 2019. During that hearing, she confirmed that she had reviewed the PSR and proposed conditions of supervised release with Attorney Arata. Attorney Arata again argued at the hearing that Custer's medical issues and overstated criminal history category arising from the outdated convictions supported a downward departure. Custer also spoke at the hearing, expressing her remorse for the crime and asking the Court to consider her health needs in reaching a sentence. This Court overruled Custer's objections to the PSR and sentenced Custer to a term of 63 months, within the applicable guidelines. This Court stated that the 63-month sentence would have been the sentence imposed even if it had sustained Custer's objections.

As is customary, Custer was informed of her appellate rights at the conclusion of the sentencing hearing. Custer did not file a timely notice of appeal, nor did she request that the clerk perfect an appeal on her behalf.

Following her sentencing, Custer embarked on a letter writing campaign to the Court to raise concerns she had with Attorney Arata's representation. The letters touched on a number of complaints, but generally alleged: (1) that Attorney Arata had failed to file an appeal on Custer's behalf despite being requested to do so; (2) she had information that would support a downward departure under U.S.S.G. § 5K1.1; (3) Attorney Arata had failed to fight hard enough for her; and (4) her sentencing hearing was unfair because she was on medication at the time. Custer's letters

became increasingly unhinged over time; they went from questioning Attorney Arata's representation to questioning the factual bases for the charges, questioning the character of the victims, accusing the Court of "bias and disgust," and accusing Attorney Arata and the Assistant United States Attorney of using racial epithets towards Custer's husband and children.

**B.** **Legal Discussion**

Section 2255 requires the court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "Habeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006) (quoting *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). There are "significant procedural hurdles" to consideration of a petitioner's habeas claim. *Bousley v. United States*, 523 U.S. 614, 615 (1998). Collateral relief is appropriate only when the error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. Unites States*, 113 F.3d 704, 705 (7th Cir. 1997).

**1.** *Evidentiary Hearing*

The consistent theme throughout Custer's correspondence to this Court has been her desire for a "fair hearing." Although Custer never specifically requests an evidentiary hearing on her § 2255 motion, the Court will construe her filings as such.

A § 2255 motion does not mandate an evidentiary hearing. *Prewitt*, 83 F.3d at 819; *see also Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). "[A] district court must grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief."

*Kafo*, 467 F.3d at 1067 (internal quotations omitted). However, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" then a hearing is not required. *Id*. Allegations that are "vague, conclusory, or palpably incredible rather than detailed and specific" do not warrant a hearing. *Bruce*, 256 F.3d at 597. Likewise, "mere speculation" does not warrant an evidentiary hearing, as the petitioner "must file a detailed and specific affidavit showing he has actual proof of allegations he is making." *Miller v. United States*, 183 Fed. Appx. 571, 578 (7th Cir. 2006). For evidentiary hearing consideration, the Seventh Circuit requires a petition made pursuant to § 2255 to "include an affidavit setting forth the specific basis for relief." *Kafo*, 467 F.3d at 1067. An affidavit accompanying the petition is a threshold requirement and "its absence precludes the necessity of a hearing." *Id*. The specific allegations in the petition and accompanying affidavit must go beyond merely unsupported assertions, as "[m]ere unsupported allegations cannot sustain a petitioner's request for a hearing." *Prewitt*, 83 F.3d at 819.

Custer's Motion is not accompanied by a separate affidavit. However, the Motion is signed by Custer under the penalties of perjury, so the Court will accept her filing as meeting the threshold requirement.

That being said, there is nothing in the Motion that would require an evidentiary hearing. The only factual allegation in the Motion that would possibly require a hearing is Custer's assertion that Attorney Arata failed to comply with her request that he appeal her sentence. There are at least two problems with even this allegation. First, it is not listed as a ground on which Custer claims that she is being held in violation of the Constitution, laws, or treaties of the United States. Instead, the only reference to the appellate issue is in paragraph 9 of the Motion where it appears as an apparent explanation for why Custer failed to file an appeal from her judgment of conviction. (ECF

5

No. 261 at 2). If Custer does not seek to challenge her sentence based on the failure to file the appeal, the Court is not inclined to do so for her.

More importantly, Custer fails to include any specific allegations that would support her claim. The entirety of her discussion of the appeal issue is limited to two lines:

> My Attorney Pat Arata failed to file Appeal he said it would not do any good. I asked 2 times.

(*Id.*) (all sic). This allegation is the definition of vague and conclusory. There is no indication as to when Custer made the requests, where she made the requests, or in what form she made the requests. To the extent the requests were in writing, no such writings have been provided to the Court. In the face of Attorney Arata's affidavit stating that "[a]t no time after her sentencing did Ms. Custer indicate a desire to appeal or request me to file an appeal on her behalf," the Court finds no reason to accept Custer's unsupported assertion.

Moreover, the Court gives Custer's under oath statements less credence than it otherwise would because Custer has demonstrated repeatedly that her oath is flexible depending on the circumstances. For instance, Custer stated, under oath, at her change of plea hearing that no one had made any promise or assurance to her to persuade her to accept the plea agreement. (ECF No. 227 at 12, 17). In her Motion, Custer now claims that Attorney Arata "promised [her] only a few months." (ECF No. 261 at 5). At her change of plea hearing, Custer agreed that the amount of her theft was approximately $1.44 million. (ECF No. 227 at 27–30). Custer now faults Attorney Arata for failing "to fight the Amount of Money." (ECF No. 261 at 4) (all sic). At her sentencing hearing, Custer stated, again under oath, that she agreed with everything Attorney Arata said on her behalf. (ECF No. 265 at 15). Now, Custer claims that Attorney Arata failed to advance any of her arguments at sentencing. (ECF No. 261 at 4). In short, there is no reason to believe that Custer's

under oath statements carry with them the same solemnity that they would otherwise be entitled. *See*, *e.g.*, *Davis v. Washington*, 547 U.S. 813, 836 (2006).

It is also clear from Custer's correspondence to the Court that she is willing to say anything to free herself from prison. When her unfounded assertions against Attorney Arata failed to gain traction, Custer opted for a scorched earth strategy. Custer accused this Court, Attorney Arata, and AUSA Tina Nomay of discrimination and violation of her civil rights. (ECF No. 263). She specifically accused Attorney Arata and AUSA Nomay of calling her children "stupid" and referring to her as a "n***** lover" because she is married to an African American man. (*Id*. at 1). There is absolutely no evidence advanced in support of these outrageous claims. Rather, they seem to have been asserted for no reason other than Custer's erroneous belief that she would be released from prison pending a civil claim related to these new civil rights violations. (*Id*. at 3).

In short, the Court finds Custer's filings wholly insufficient to warrant a hearing. The allegations contained therein are, as the Seventh Circuit said in *Bruce*, "vague, conclusory, [and] palpably incredible." The Court will not give Custer yet another forum in which to defame those involved in the prosecution *and* defense of her crimes, and her request for a hearing is denied.

**2.**     *Failure to File Appeal*

As noted above, if Custer has asserted a claim that might entitle her to relief under § 2255 it is the claim that Attorney Arata ignored her request to file an appeal of her sentence. As the Supreme Court has made clear, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal, with no need for a further showing of his claims' merit, regardless of whether the defendant has signed an appeal waiver." *Garza v. Idaho*, 139 S.Ct. 738, 747 (2019) (citations omitted). Thus, if Custer can

7

demonstrate that she "otherwise would have taken" an appeal but for Attorney Arata's failure, she has made out a successful § 2255 claim.

For the same reason that her allegations fail to require a hearing, they fail to establish that Custer would have taken an appeal but for Attorney Arata's failure. *Kafo* demonstrates the kind of evidence that would support a finding in favor of a petitioner. In that case, the defendant's petition stated the following facts:

> During the sentencing phase of the instant case, the Judge pursuant to Rule 32(a)(2), informed petitioner of his right to appeal, and that he had ten days to give notice to the court. Petitioner immediately informed counsel that he wants an appeal filed because the sentence imposed upon him went beyond what counsel had told him to expect.
>
> Counsel responded and told petitioner to call him later in regards to an appeal. Petitioner followed up with several phone calls, and counsel reassured petitioner that the appeal will be filed appropriately. To be certain that counsel will meet up with petitioner's appeal request, petitioner instructed his family to call counsel in that regard, given that the sentencing judge had given a ten day window to effect notice of appeal to the court.
>
> Few weeks after sentence, petitioner again called counsel to find out the situation with this appeal, but counsel responded by telling petitioner to file the appeal himself. Petitioner in dismay and disbelief could not ascertain counsel's reason(s) for not effecting his appeal, as he had promised. Thus prompting petitioner to file the habeas corpus 2255 petition, now before this Honorable Court.

*Kafo*, 467 F.3d at 1070, n.10. The petition in *Kafo* provided details not found in Custer's Motion, including the date and place of communications, the manner of those communications, the content of the communications, and the steps taken to assure that an appeal would be filed.

Custer's Motion contains no detail whatsoever. Other than her claim that she twice asked Attorney Arata to file an appeal, the Motion provides the Court with no factual basis to conclude that she wanted an appeal or would have filed an appeal. Custer identifies no issues she wanted to address on appeal, so there is no legal reason to believe Custer wanted an appeal or would have

8

filed an appeal. Rather, like most of Custer's other claims, this appears to be an after-the-fact creation to get Custer out of jail.

This case is further distinguished from *Kafo* with respect to the conduct of the attorneys. In *Kafo*, counsel arguably lulled the defendant into a false sense of security by promising to file the appeal. Thus, the defendant was reasonable in not taking steps on his own to perfect an appeal. Here, according to Custer's allegations, the opposite is true. Custer knew Attorney Arata was not going to file an appeal on her behalf because he told her "it would not do any good." With this information in hand, Custer could and should have taken steps on her own if she wanted to pursue an appeal. That she did not is evidence that she never intended to file an appeal, with or without Attorney Arata's assistance. Without evidence that she wanted to file an appeal, Custer's Motion cannot be granted. *See*, *e.g.*, *Richardson v. United States*, 2019 WL 2476688 at *7 (S.D. Ind. June 13, 2019).

**3.** *Remaining Allegations of Ineffective Assistance*

Custer's remaining allegations of ineffective assistance of counsel fare no better. Custer first alleges that Attorney Arata failed to fight for her, specifically claiming that he failed to fight the amount of money involved in the offense and further failed to obtain her relief under U.S.S.G. § 5K1.1. These allegations are factually and legally deficient. Contrary to Custer's allegations, Attorney Arata did contest the amount of money involved in the offense. Nearly five pages of Attorney Arata's objection to the initial PSR are devoted to questioning the evidence supporting the monetary calculation. (ECF No. 229 at 1–5). The objection specifically states:

> Kelly Custer is not responsible for taking $1,463,437.50 from the Gourlies. Mrs. Custer was only a conduit for the Gourlies to repay their debt to nefarious characters. She did, at the end, engage in prohibited conduct and did improperly obtains funds from the Gourlies. But, in no uncertain terms, did she obtain, for her personal benefit, $1,463,437.50.

9

(*Id*. at 5). It is simply incorrect to state that Attorney Arata did not raise this issue to the Court.

With respect to the § 5K1.1 issue, the Government correctly asserts that it had sole discretion whether to offer or file for sentencing relief under the guidelines. *United States v. Miller*, 458 F.3d 603, 604–05 (7th Cir. 2006). The Government exercised that discretion in this case and declined to seek Custer's help. The Government's exercise of discretion cannot amount to ineffective assistance of counsel on the part of Attorney Arata. *Sacerich v. United States*, 960 F. Supp. 1360, 1365 (N.D. Ind. 1997).

With respect to the more salacious allegations in the Motion, even if true they are insufficient for relief under § 2255. Alcoholism, or even alcohol or drug use during court proceedings, does not necessarily constitute a per se violation of the Sixth Amendment absent some identifiable deficient performance resulting from the intoxication. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (failure to identify specific instances where counsel's alcoholism impaired performance warrants dismissal of Sixth Amendment claim); *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987) (failure to indicate specific evidence of how counsel's drug use impaired trial performance did not satisfy prejudice prong). Custer does not allege that Attorney Arata's intoxication resulted in any identifiable deficient performance. Instead, Custer's letters to the Court indicate that Attorney Arata's drinking was confined to an end of the day meeting at his office, an allegation Attorney Arata admits. (*Cf.* ECF Nos. 249 at 1; 267 at 2). The Court fails to see how a single, after hours drink constitutes constitutionally deficient performance.

In raising ineffective assistance of counsel as the primary basis for her Motion, Custer had the burden of demonstrating both that Attorney Arata's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Custer has demonstrated neither. She has presented this Court with no evidence that Attorney

Arata's representation was constitutionally deficient and has failed to identify any specific prejudice that might have resulted. Therefore, her Motion cannot be granted on the basis of ineffective assistance.

**4.** *Bias Allegations*

Although they are baseless and inflammatory, the Court will nonetheless address Custer's allegations that everyone involved in her criminal case was biased against her. Allegations of prosecutorial and judicial bias and misconduct must be supported by some evidence that it manifested itself in improper activity during the case. *United States v. Gabriel*, 525 F. Supp. 173, 179–80 (N.D. Ill. 1981). Custer presents no such evidence. Rather, she makes the conclusory statement that she "could not get a good plea deal" due to the bias. (ECF No. 261 at 7). The record demonstrates that, as part of her plea deal, the Government dropped six out of the seven charged offenses. (ECF No. 144 at 5). Moreover, the Government agreed to reduce Custer's total offense level by two to resolve her objections to the PSR. (ECF No. 235). This Court sentenced Custer within the Guidelines. Far from improper, everyone involved in Custer's case acted with objective reasonableness. Even if the whole world was biased against Custer, that bias did not affect the sentence she received. She is not entitled to habeas relief on this basis.

**C.    Certificate of Appealability**

Under Rule 11(a) of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make "a substantial showing of the denial of a constitutional right" by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks and citation omitted). When a district court dismisses a petition on procedural grounds without reaching the underlying constitutional claims, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. However, additional argument is not necessary here. Custer has chosen to forego submitting evidence in favor of ad hominem attacks and baseless conspiracy theories. No amount of briefing or argument would raise Custer's unsupported aspersions to constitutional proportions. Consequently, the Court will deny a certificate of appealability as to Custer's Motion.

**D.     Conclusion**

For the foregoing reasons, the Court DENIES Custer's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 261) and DISMISSES her case challenging the Court's sentence. The Court DENIES a certificate of appealability as to Custer's Motion. Custer may seek a certificate of appealability from the court of appeals under Federal Rule of Appellate Procedure 22.

SO ORDERED on February 5, 2020.

                                               s/ *Holly A. Brady*
                                               JUDGE HOLLY A. BRADY
                                               UNITED STATES DISTRICT COURT