UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:15-CR-33-HAB |
| | ) | |
| KELLY CUSTER | ) | |

## OPINION AND ORDER

Kelly Custer ("the Defendant") filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 274).[1] The Government filed its response to her Motion on July 13, 2020. (ECF No. 284). For the following reasons, the Defendant's Motion will be DENIED.

## PROCEDURAL BACKGROUND

On June 24, 2018, the Defendant, along with her children, was charged in a seven count Indictment with conspiracy to commit wire fraud, in violation of 18 U.S.C. §1349 (Count 1), wire fraud in violation of 18 U.S.C. §1343 (Counts 2–4), and transmission of interstate communications with intent to extort in violation of 18 U.S.C. § 875(b) (Counts 5-7). As limned, these counts allege that the Defendant conspired with her children to fraudulently obtain money between January 1, 2008 and May 14, 2015, by convincing the victims that the mafia would harm her friends and family and the Defendant's life would be in jeopardy if she did not make payments to satisfy a

---

[1] To the extent the Defendant was seeking a reduction pursuant to the First Step Act ("FSA") and pursuant to this Court's General Order 2020-11, the Court referred the letter to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the defendant with respect to her motion. (ECF No. 275). The FCD initially appeared on the Defendant's behalf (ECF No. 276) but, on May 21, 2020, the FCD filed a Motion to withdraw as counsel. (ECF No. 280). The Motion to Withdraw is now GRANTED.

debt. (ECF No. 28). As part of this scheme, Defendant transmitted communications containing kidnapping threats and threats of injury to the victims.

On September 3, 2019, Defendant pled guilty, pursuant to a written plea agreement with the Government, to Count 1, conspiracy to commit wire fraud. Defendant was sentenced to 63 months of imprisonment, two years of supervised release and ordered to pay $1,463,437.50 in restitution to the victims. (ECF No. 248). The Defendant has been housed at the FMC Satellite Camp next to the FMC Medical Facility in Lexington, Kentucky with an anticipated release date in April 2024.

## DISCUSSION

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

> (1) in any case --
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The Government concedes that the Defendant has exhausted her administrative remedies at her facility and that her motion is properly before the Court. Thus, the Court turns to the substance of the Defendant's request, her contention that she has demonstrated "extraordinary and compelling reasons" for her release.

The Defendant asserts that she should be released from custody because she has medical conditions that increase her risk of serious complications from COVID-19 including unspecified nodules in her left lung which she asserts make her lungs "very weak." She also states that "the flu is bad here" and the BOP "cannot take us on med trips." (ECF No. 274).

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, her age, her family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. U.S.S.G. § 1B1.13, Application Notes 1(A)–(D). Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the

community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *4 (N.D. Ind. June 11, 2020); *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020). !

In this case, Defendant has given this Court, little, if any basis upon which it could grant her request for compassionate release. Defendant's medical condition does not qualify as "compelling and extraordinary" under subsection 1(A)(i) or (ii) of the policy statement commentary to section 1B1.13. Under that commentary, a Defendant must demonstrate either that she is suffering from a terminal illness under (A)(i); or that she has (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or is (3) experiencing deteriorating physical or mental health because of the aging process. If relying on 1(A)(ii), a Defendant must also show that the medical condition "substantially diminishes the ability of the defendant to

4

provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13

Defendant represents in her filing that she has 4 nodules on the left lobe of her lung. She contends they have grown during her incarceration and one is cancerous. The Government has provided the Court with Defendant's medical records from the BOP. These records reflect that Defendant was seen at the University of Kentucky in December 2019, for shortness of breath. A CT scan was performed and noted the 4 nodules in her left lobe and multiple punctate non-calcified nodules in her right lung. Although a comparison to any prior imaging was recommended, no prior images were available. Instead, a follow up chest CT was to be performed in 6 months. Nothing in the radiology report or her medical records indicates that her nodules have increased in size or that they are cancerous. Rather, Defendant's case manager at the institution indicates that "Custer's medical condition has not changed since she [sic] her arrival. She is a screen 2, medical inmate who requires stable, chronic care. She has some conditions for which she needs ongoing care, but she is not currently assigned to a Medical Center." (ECF No. 286-4).

Defendant's medical records further demonstrate that she, in fact, has diabetes which is currently controlled by medication. Defendant does not mention her diabetes in her Court filing but, to the extent the Court is looking at the record as a whole, it notes her diagnosis and the fact that the CDC recognizes diabetes as a comorbidity that may increase the risk of serious injury or death from COVID-19. *See* People Who Are At Higher Risk for Serious Illness, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed July 29, 2020). Defendant's records indicate that she told medical personnel that she "used to be on insulin" but did not start it at the facility. However, there is no record of Defendant's A1C or documentation indicating that insulin is required for Defendant's treatment. There is also

5

no medical evidence that this condition is not well controlled or that the BOP is unwilling or unable to adequately treat her.

That said, Defendant's records also demonstrate that she is part and parcel to blame for the state of her health. Defendant complained of swelling in her legs in March 2020. But, as the Government notes in its response, her BOP medical records contain an extensive two-week history of her commissary purchases, all of which are intended to demonstrate Defendant's overconsumption of sodium and sugar. Of the numerous items listed, it would appear that Defendant purchased seven 12 packs of Pepsi and Mountain Dew in a two-week period. "Frequently drinking sugar-sweetened beverages is associated with weight gain/obesity, type 2 diabetes, heart disease, kidney diseases, non-alcoholic liver disease, tooth decay and cavities, and gout, a type of arthritis." https://www.cdc.gov/nutrition/data-statistics/sugar-sweetened-beverages-intake.html. Thus, it is no surprise that her medical records reflect a 30-pound weight increase and increased sodium intake as causes of her edema. BOP medical personnel have counseled Defendant of the need for her to make lifestyle changes, including diet and exercise, to aid in her self-care and treatment.

Finally, Defendant's medical records reveal that she has refused treatment on several occasions. Defendant refused a pulmonary medical trip on February 13, 2020. She also refused ophthalmic exams warranted by her diabetes in November 2019, January 2020, March 2020 and April 14, 2020. Thus, despite the Defendant's assertion in her filing, dated April 27, 2020, that medical visits were not permitted, it appears she declined one such trip just thirteen days earlier.

Based on all the above, the Defendant has not demonstrated that her conditions meet the requirements under subsection (A) of the policy statement commentary. Nor has the Defendant

set out any basis for this Court to conclude that her conditions substantially diminish her ability to provide self-care within the institution.

As for the remaining factors such as age and family circumstances, Defendant has identified none at all that would justify granting her motion. There is also no evidence to suggest that the conditions at FCI Satellite Camp, next door to the FMC Medical Facility,[2] place her at a significant risk. *See, Melgarejo*, , 2020 WL 2395982, at *3 ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus."), *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Defendant asserts that "two people have it next door," however, Defendant's case manager represents that as of the date of the Government's response, there have been no female inmates testing positive.

Moreover, the Government's brief cites ongoing efforts by the Bureau of Prisons to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 11, 2020); see also, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. The minimal number of cases at this institution is a testament to the BOP's mitigation and safety efforts.

---

[2] FMC Lexington houses 1,284 inmates while the satellite camp houses 150 females. FMC Lexington appears on the BOP website, https://www.bop.gov/coronavirus/, with COVID-19 statistics but the satellite camp does not.

Finally, with respect to the § 3553(a) factors, the Court observes that the Defendant has served only 10 months of her 63-month sentence. This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. The nature and circumstances of the Defendant's offense, bilking nearly $1.5 million from her victims and threatening them as part of her scheme, is particularly egregious. Given the nature of her white collar crime and the short time she has spent incarcerated for it, the Court cannot be assured that she is not a danger to the community should she be released. Thus, the Court finds that the significant sentence reduction Defendant seeks, which is even below that which the Court previously rejected, would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motion is DENIED.

## CONCLUSION

Based on the foregoing, the Defendant's Motion (ECF No. 274) is DENIED.  The Motion to Withdraw filed by the FCD is also GRANTED. (ECF No. 280).

So ORDERED on August 19, 2020.

s/ *Holly A. Brady*  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT
